25-13354                KIDD, J., Concurring                1

KIDD, Circuit Judge, concurring:

      Mario Guevara is a citizen of El Salvador living in the United States. He is also an independent journalist who regularly livestreams, records, and publishes videos of law enforcement officers engaged in their official duties. On June 14, 2025, Guevara was reporting on a protest of the Trump administration in Atlanta, Georgia. The local police arrested him. They charged him with several misdemeanor violations under Georgia law, including unlawful assembly, obstruction of an officer, and pedestrian improperly entering a roadway as a pedestrian. Eventually, the prosecutor assigned to Guevara's case reviewed video surveillance of his arrest and determined that Guevara lacked the intent to disregard lawful commands and had been compliant with the officers' directives. The prosecutor dismissed the charges on June 25, 2025.

      Freedom of speech, freedom of the press, and the right to peacefully assemble are guaranteed by the First Amendment to the United States Constitution. And the Supreme Court long ago recognized that "[f]reedom of speech and of press is accorded" to noncitizen immigrants "residing in this country." *Bridges v. Wixon*, 326 U.S. 135, 148 (1945) (citing *Bridges v. California*, 314 U.S. 252 (1941)). The First Amendment is applicable to the states through Section 1 of the Fourteenth Amendment. U.S. CONST. amend XIV, § 1; *see Gitlow v. New York*, 268 U.S. 652, 666 (1925). So there is no doubt that Guevara, a noncitizen journalist, had a First Amendment right to attend and to report on the protest on the day of his arrest.

2                      KIDD, J., Concurring                  25-13354

But whether local officers violated Guevara's First Amendment rights by arresting him at the protest is not before us today. Nor is whether he was targeted for removal based on his constitutionally protected activities.

Instead, we are tasked with determining whether to grant Guevara's motion for a stay of his removal. To answer that question, "we consider '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" *Blake v. U.S. Att'y Gen.*, 945 F.3d 1175, 1178 (11th Cir. 2019) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). "[F]ailure to establish a strong likelihood of success on the merits is fatal to a motion to stay removal." *Id*. We construe a motion to remand that seeks to introduce new evidence as a motion to reopen the removal proceedings. *Alkotof v. U.S. Att'y Gen.*, 106 F.4th 1289, 1297 (11th Cir. 2024). A denial of this motion is reviewed for abuse of discretion. *Id*.

Guevara entered the United States in 2004 on a visitor visa. He has remained in the country since that time and resides in Georgia with his wife and two children, one of whom is a United States citizen. In September 2005, Guevara applied for asylum and withholding of removal. An immigration judge denied both applications in June 2012 and ordered that Guevara be removed to El Salvador. Guevara appealed the immigration judge's final order of

25-13354               KIDD, J., Concurring                3

removal to the Board of Immigration Appeals ("BIA"). His appeal was unresolved and administratively closed until 2025.

In April 2025, Guevara's son filed a Form I-130 Petition for Alien Relative, which allows a United States citizen to establish a qualifying relationship with a noncitizen relative who wishes to stay in the country permanently and apply for a green card. If the citizen-sponsoring relative is the child of the noncitizen beneficiary, as is the case here, the beneficiary may concurrently file for an adjustment of status while the I-130 petition is pending by completing an I-485 Application To Register Permanent Residence or Adjust Status. *See* 8 C.F.R. § 245.2(a)(2)(B). Critically, Guevara did not file an I-485.

On June 27, 2025, the Department of Homeland Security filed a motion to recalendar Guevara's 2012 appeal. Guevara did not oppose the motion and filed a motion to remand the case to the immigration judge to consider newly available evidence—the pending I-130 petition. Thereafter, the BIA recalendared Guevara's appeal. On September 19, 2025, the BIA dismissed Guevara's appeal of his asylum and withholding claims, and denied his motion to remand. This appeal followed.

On appeal, Guevara challenges only the BIA's denial of his motion to remand. On September 26, 2025, he filed the instant motion seeking an emergency stay of the immigration judge's removal order. We previously stated the BIA has discretion to deny a motion to reopen if (1) the noncitizen fails "to establish a prima facie case of eligibility for adjustment of status," (2) fails "to

| 4 | KIDD, J., Concurring | 25-13354 |

introduce evidence that was material and previously unavailable," or (3) the BIA determines "that despite the [noncitizen's] statutory eligibility for relief, he or she is not entitled to a favorable exercise of discretion." *Chacku v. U.S. Att'y Gen.*, 555 F.3d 1281, 1286 (11th Cir. 2008). A noncitizen immigrant is statutorily eligible for an adjustment of status to lawful permanent resident if the Attorney General, within her discretion, determines that the noncitizen (1) makes an application for such adjustment, (2) is eligible to receive an immigrant visa and is admissible for permanent residence, and (3) an immigrant visa is immediately available to him at the time the application for adjustment is filed. Immigration and Nationality Act of 1952 ("INA") § 245.1(a) (codified at 8 U.S.C. § 1255(a), (i)(2)).

To establish prima facie eligibility for adjustment of status, Guevara provided evidence of his initial inspection and admission to the United States and a receipt for the filing of the I-130 petition. The BIA determined Guevara did not meet his burden of establishing eligibility for adjustment and relied on our decision in *Chacku*. In that case, a noncitizen had an approved I-140 employment-based visa petition and a pending I-485 adjustment of status application on the day he moved the BIA to remand the case. *Chacku*, 555 F.3d at 1283–85. Despite that, we held that he did not have an immigrant visa immediately available to him within the meaning of INA § 245(a). *Id.* at 1286–87. Before *Chacku*, in *Zafar v. United States Attorney General*, we held that three noncitizens who had not filed I-485 applications before their removal hearings were not statutorily eligible for an adjustment of status within the meaning of INA § 245(a). 461 F.3d 1357, 1362–64 (11th Cir. 2006).

25-13354 KIDD, J., Concurring 5

In this case, at the time Guevara sought a remand, his I-130 petition had not been approved, nor had he filed an I-485 application for adjustment of status. Our precedent likely forecloses relief under these circumstances. *See Scott v. United States*, 890 F.3d 1239, 1257 (11th Cir. 2018) ("The prior-panel-precedent rule requires subsequent panels of the [C]ourt to follow the precedent of the first panel to address the relevant issue, 'unless and until the first panel's holding is overruled by the Court sitting en banc or by the Supreme Court.'") (quoting *Smith v. GTE Corp.*, 236 F.3d 1292, 1300 n.8 (11th Cir. 2001)).

★ ★ ★

The First Amendment protects "the people," a term the Supreme Court has repeatedly interpreted to include all persons within the United States, regardless of immigration status, which ensures that even noncitizen immigrants are guaranteed the rights to free speech, free assembly, and free press. But at this juncture, Guevara challenges only the BIA's denial of his motion to remand. And on that question, I agree that he has failed to meet his burden to show that he is likely to succeed on the merits. *Nken v. Holder*, 556 U.S. at 434.